**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DALE BRETCHES,

    Plaintiff,

v.

RICHARD KIRKLAND,

    Defendant.

No. C 06-05277 JSW

**ORDER OF SCREENING DISMISSING COMPLAINT**

Before the Court is a civil rights action filed by Dale Bretches, an inmate at Pelican Bay State Prison, against the former prison warden and Defendant, Richard Kirkland. Bretches filed a motion for a preliminary injunction on September 11, 2006 and a second motion for preliminary injunction filed on October 6, 2006 after the filing of a first amended complaint to enjoin enforcement of prison regulations which banned publication of his book entitled "Dog O' War." Bretches also seeks declaratory relief stating that prisoners have the right to publish, the warden violated his First Amendment rights, the prison rules were used impermissibly as content regulation, and that the book was banned for retaliatory reasons. Defendant filed a motion to screen Bretches' complaint on October 27, 2006 pursuant to 28 U.S.C. §1915A. As the Court finds that Plaintiff has failed to state a claim against Defendant, the complaint is DISMISSED and Plaintiff's motion for a preliminary injunction is DENIED as moot.

**BACKGROUND**

As alleged in his complaint, Dale Bretches, a prisoner at Pelican Bay State Prison, published a book entitled "Dog O' War," which was banned from publication by the prison. The book is about, among other things, the breeding dogs for home protection, as well as the dog mauling death of Diane Whipple and the subsequent criminal trials of Marjorie Knoller and

1   Robert Noel by the San Francisco District Attorney's Office.  According to the complaint, the
2   prison banned the book because it allegedly violated various sections of the California Code of
3   Regulations ("CCR").  First, the prison banned the book on the basis that it was published in
4   violation of CCR, Title 15, Section 3024(a) which prohibits business dealings by inmates.
5   (First Amended Complaint ("First Am. Compl."), Attach., Ex. A at 0014.)  Second, the prison
6   banned the book on the basis that portions of the text were inflammatory in violation of CCR,
7   Title 15, § 3004(b) which prohibits the open display of disrespect or contempt for others in a
8   manner intended to or reasonably likely to disrupt orderly prison operations or provoke violence
9   and subsection (c) which prohibits discrimination on various bases.  (*Id.*, Ex. A at 0014-15.)

10          Bretches makes only an "as applied" challenge to the prison's decision to ban his book.
11  (*See* Motion for Preliminary Injunction at 2.)  Bretches alleges that he is not engaged in
12  business dealings because the publishing company has retained all the profits from sales of the
13  book.[1]  (First Am. Compl., Attach., Ex. A at 0008.)  Second, the record also indicates that
14  Bretches has offered to excise any portion of the book that violates the cited regulation sections
15  on the basis that the text is inflammatory or promotes unlawful discrimination.  (First Am.
16  Compl., Attach., Ex. A at 0001.)  Defendant sought to have this Court screen the amended
17  complaint pursuant to 28 U.S.C. § 1915A to determine whether it states any legally cognizable
18  claims.

19                                **ANALYSIS**
20  **A.     Legal Standard.**
21         **1.     Motion to Screen.**
22          Under 28 U.S.C. § 1915A, federal courts shall engage in a preliminary screening of
23  cases in which prisoners seek redress from a governmental entity or officer or employee of a
24  governmental entity.  On review, courts shall identify cognizable claims or dismiss the
25  complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to

---

[1] In this regard, the Court notes that Bretches' counsel, Herman Franck, may be the sole owner of the company "Kit Media," the publisher of the disputed book. (First Am. Compl. Attach., Ex. A at 0010.) Consequently, Mr. Frank could have an interest in the subject matter of the litigation which may require written disclosure to his client. *See* Cal. Rules of Prof'l. Conduct 3-310(B)(4).

United States District Court
For the Northern District of California

state a claim upon which relief may be granted [or] seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The standards of Section 1915A apply even if the prisoner is not proceeding *in forma pauperis*. *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (joining the Second, Fifth, Sixth and Tenth Circuits in holding that Section 1915A applies even when a prisoner pays full fee at outset).

Failure to state a claim is ground for dismissal under 28 U.S.C. §§ 1915A and 1915(e)(2). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Terracom v. Valley National Bank*, 49 F.3d 555, 558 (9th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Review is limited to the contents of the complaint, including documents physically attached to the complaint or documents that the complaint necessarily relies upon and whose authenticity is not contested. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the Court may take judicial notice of facts that are not subject to reasonable dispute. *Lee*, 250 F.3d at 688, *see also* Fed. R. Evid. 201(b). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Symington*, 51 F.3d at 1484.

**2.    Civil Rights Act Claim Requires Constitutional Violation.**

In this matter, Bretches alleges a claim for violation of the Civil Rights Act, 42 U.S.C. § 1983, for violation of his First Amendment rights. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a violation of a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, there is no question that the prison officials acted under color of state law. The

3

only issue is whether, in this context, Bretches makes a cognizable claim for violation of a right secured by the Constitution.

**B.     Analysis of Defendant's Motion to Screen.**

   **1.     Prisoner's Rights to Generate Revenue.**

Bretches argues that the regulations in this matter have been applied in a non-content neutral manner making them impermissible content regulation in violation of his First Amendment rights. (First Am. Compl. ¶ 20.) Bretches contends that the restriction on prisoners generating revenue was applied here for the purpose of regulating the content of his protected speech. Bretches has, however, also acknowledged his effort to circumvent the restriction on revenue generation by disclaiming his profits in the publication of his book. (Motion for Preliminary Injunction at 13.)

However, the Court finds the regulation prohibiting inmates from engaging in business activities, CCR, Title 15, § 3024(a) is a content neutral regulation and has been applied here in a content neutral manner. The regulation defines a business as "any revenue generating or profit making activity." 15 CCR § 3024(a). Any sale of the book will generate revenue. Disclaiming or assigning profits from book sales cannot circumvent the plain meaning of the regulation because any revenue generating activity is a prohibited business dealing. *See Bethesda Hospital Ass'n. v. Bowen*, 485 U.S. 399, 403 (1988) ("The plain meaning of the statute decides the issue presented"). Bretches entered into a contract with the publishing company that provides for payment of royalties from book sales. (First Am. Compl., Attach., Ex. A at 25, 28-29.) There is nothing to suggest that the prison regulation prohibiting business dealings was applied here by virtue of the content of the book.

Bretches' reliance on *In re Van Geldern* for the proposition that an inmate has the absolute right to sell his manuscript is misplaced. 5 Cal. 3d 832, 837-38 (1971). *In re Van Geldern* relied on California Penal Code § 2603, which granted inmates the right to convey property; however, this provision was repealed in 1975 and replaced by California Penal Code § 2601. *See* Cal. Pen. Code § 2603 (repealed 1975). California Penal Code § 2601, unlike

4

1  California Penal Code § 2603, contains a provision allowing corrections officials to prohibit
2  inmate sales made for a business purpose. Cal. Pen. Code § 2601.

3  Furthermore, "a prisoner has no recognized right to conduct a business while
4  incarcerated." *French v. Butterworth,* 614 F.2d 23, 24 (1st Cir. 1980). Restrictions on inmate
5  business activities are appropriate limitations on inmate freedom. *King v. Fed. Bureau of*
6  *Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). Also, prisoners do not have a right to engage in
7  business dealings related to securing the publication of a book. *Stroud v. Swope*, 187 F.2d 850,
8  851 (9th Cir. 1951) (holding that an inmate was not entitled under prison regulations to engage
9  in business dealings no matter how legitimate related to securing publication of a book written
10 while incarcerated). Also, prison regulations prohibiting businesses are generally upheld
11 because of the valid penological interest of preventing inmates from receiving compensation.
12 *Prison Legal News v. McDonough,* 2006 WL 28881991, at *3 (11th Cir. 2006).

13 In *Byers v. United States*, the Ninth Circuit affirmed the district court's dismissal on a
14 motion to screen a pro se complaint which challenged prison regulations prohibiting inmates
15 from engaging in business activities. 1993 U.S. App. LEXIS 15742, at *1-3 (9th Cir. 1993). In
16 *Mallette v. Pendergrass*, the Ninth Circuit affirmed the district court's summary judgment ruling
17 against the inmate's 42 U.S.C. § 1983 challenge to regulations prohibiting inmates from
18 engaging in business activities. 1995 U.S. App. LEXIS 15593, at *1-3 (9th Cir. 1995). In both
19 cases, the Ninth Circuit interpreted *French v. Butterworth* and *Stroud v. Swope* to stand for the
20 proposition that inmates do not have a constitutional right to engage in business activities and
21 upheld the regulations prohibiting inmates from engaging in business activities. *Mallette*, 1995
22 U.S. App. LEXIS 15593, at *2; *Byers*, 1993 U.S. App. LEXIS 15742, at *2.[2]

23 In sum, the above cases stand for the proposition that inmates do not have a general
24 constitutional right to engage in business dealings. However, because Bretches claims the
25 regulation, as applied, infringes on his constitutional right to free speech under the First

---

[2] *Byers* and *Mallette* are both unpublished opinions and are cited for their persuasive, not precedential, value.

5

Amendment, the Court now turns to the First Amendment analysis to analyze the effect of the regulation as applied to Bretches.

### 2. As Applied Challenge to Regulation Under the First Amendment.

Imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. *Beard v. Banks*, 126 S. Ct. 2572, 2577 (2006) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)). But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. *Beard*, 126 S. Ct. at 2577-78. Courts owe "substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The Supreme Court reconciled these principles by holding that a prison regulation which restricts a prisoner's First Amendment right to free speech is valid only if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). There are four factors that the Court must consider to determine whether a prison regulation is constitutional: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on guards and other inmates; and, (4) whether there are obvious alternatives to the regulation that show it is an exaggerated response to prison conditions. *Id.* at 89-91. The *Turner* analysis applies equally to facial and "as applied" challenges. *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004); *see also Hargis v. Foster*, 312 F.3d 404, 410 (9th Cir. 2002).[3]

#### a. The Business Dealings Prohibition is Rationally Related to a Legitimate and Neutral Governmental Objective.

Bretches argues that the wholesale banning of the book by the prison officials is impermissible content regulation, in violation of his First Amendment rights. (First Am. Compl.

---

[3] Because "Dog O' War" was banned by the warden by virtue of his application of 15 CCR § 3024(a) prohibiting business dealings among inmates, the Court finds it unnecessary to adjudicate the other ostensible bases upon which the prison banned publication of the book. The first proffered reason under Section 3024 is a sufficient, if not necessary, cause of the ban.

6

¶ 20.) Bretches also argues that the ban on his book is not supported by a valid penological interest. (*See* Motion for Preliminary Injunction at 12.)

To meet the first *Turner* factor, the governmental interest underlying a regulation restricting prisoners' First Amendment rights must be legitimate and neutral, and the regulation must be rationally related to that objective. *Turner*, 482 U.S. at 89-90. The regulation must operate in a neutral fashion, without regard to the content of the expression. *Id.* at 90. It is generally the state's burden to establish a rational relationship between its limiting regulation or policy and the legitimate penological objectives it asserts. *Beard*, 126 S. Ct. at 2581-82. However, if there is a "common-sense" reason for the regulation, the inmate must first show evidence to rebut this reason, and only then does the state have the burden of presenting counter evidence. *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999). "To satisfy *Turner*, the [defendant] must, at the very least, adduce some penological reason for its policy at the relevant stage of the judicial proceedings. '[C]onsiderations advanced to support a restrictive policy [must] be ... sufficiently articulated to permit ... meaningful review.' Thus, at a minimum, the reasons must be urged in the district court." *Armstrong v. Davis*, 275 F.3d 849, 874 (9th Cir. 2001) (quoting *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990)).

In this matter, the prison banned Bretches from engaging in business dealings related to publishing "Dog O' War" because the publication was in violation of 15 CCR § 3024(a). (First Am. Compl., Attach., Ex. A at 0001.) Publication of the book, as a revenue generating venture, poses a threat to legitimate penological interests. *See Prison Legal News*, 2006 WL 28881991 at *3. There are multiple "common-sense" reasons for preventing inmates from receiving compensation for writing for publication including that the prison administration would become entangled in inmate business activities, that such activities would perpetrate fraud, possible extortion and disputes among inmates and the public, that there would be increased administrative costs associated with increased business activity, and that prison officials would be unable effectively to control the inmates' interactions. *See Prison Legal News*, 2006 WL 28881991 at *3. The correctional facility also has a strong interest in preventing the "big wheel" problem, which is a prison social phenomenon where inmate leaders have the ability to wield

7

influence over fellow inmates leading to adverse affects on prison security, discipline, and rehabilitation. *Saxbe v. Wash. Post Co.,* 417 U.S. 843, 866-69 (1974).

All of these common-sense justifications are reasonably related to a legitimate penological interest of prohibiting business dealings by inmates. There is no indication in the record before the Court that there is any basis for finding that the prohibition on inmate business activities was applied in a non-content neutral manner or that the regulation lacks a valid penological interest. The first prong of the *Turner* analysis is satisfied by common-sense justifications of the prison regulation.

### b. There are Alternative Means Remain Open to the Inmate for Exercising the Right.

Bretches argues that the wholesale banning of his book tramples his First Amendment rights. (First Am. Compl. ¶ 17.) The second *Turner* factor is whether there are alternative means of exercising the right that remain open to the inmate. *Turner,* 482 U.S. at 90. This analysis requires that the right in question be viewed sensibly and expansively. *Thornburgh*, 490 U.S. at 417. The business regulation at issue does not prohibit writing a book. Bretches is free to write a book and to give away that book for free. Bretches has the right to possess any manuscript, provided it does not violate any prison regulations defining contraband or other unauthorized material. *See* 15 CCR §§ 3151 and 3152. Bretches is also free to send a manuscript to someone outside of the prison provided that the manuscript can pass the inspection performed on regular mail. *See* 15 CCR § 3152. The manuscript for "Dog O' War" was successfully sent out of the prison. (First Am. Compl., Attach., Ex. A at 0008.) The subject regulation merely prohibits marketing the book to generate revenues or make a profit. 15 CCR § 3024(a).

There are other alternatives for Bretches to express his right to free speech that comply with the promulgated regulations and the prohibition on business dealings. Because the business prohibition does not foreclose all avenues for Bretches to express his viewpoint, the regulation satisfies this portion of the *Turner* analysis.

8

### c. Accommodation of the Asserted Right Will Impose a Heavy Burden on Prison Administration.

Bretches seeks to enjoin enforcement of the regulation prohibiting business dealings by inmates so he can continue to publish "Dog O' War." (First Am. Compl. ¶ 28.) The third prong of the *Turner* analysis is what impact an accommodation of the asserted right will have on guards and other inmates. 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.* Allowing inmates to engage in business dealings will threaten security because regulation of the conduct will place an undue burden on prison administrators. *Prison Legal News*, 2006 WL 28881991 at *3. Allowing business dealings will pose a variety of security related problems such as: drawing attention to particular inmates, promoting fraud, and providing wealthy inmates the potential to exercise influence over other inmates. The regulation satisfies the third prong of the *Turner* analysis because of these concerns and the additional burden on prison administration that would be imposed by accommodating the asserted right.

### d. There are No Obvious Alternatives to the Regulation.

The fourth prong of the *Turner* analysis is whether there are obvious alternatives to the regulation that demonstrate that it is an exaggerated response to prison conditions. 483 U.S. at 90-91. If a prisoner can point to an alternative that fully accommodates his rights at *de minimis* cost to valid penological interests, such a showing would favor invalidating the regulation. *Thornburgh*, 490 U.S. at 418. However, prison officials are not required to adopt the least restrictive means of achieving their legitimate objectives. *Mauro v. Arpaio*, 188 F.3d 1054, 1063 (9th Cir. 1999) (en banc).

Bretches' proposal to disclaim profits to a third party violates 15 CCR § 3024(a) because revenue is generated. Furthermore, it is unclear how the corrections officers would be able to regulate this transaction if Bretches is allowed to publish the book and give the revenue to the publishing company or another third party. The proposed alternative still imposes a serious burden on prison administration, adversely affecting the valid penological interest in enforcement of the regulation prohibiting businesses. *Prison Legal News*, 2006 WL 28881991 at

9

1  *3. Consequently, the burden on the prison associated with this alternative is substantial. As a
2  result, the fourth prong of the *Turner* analysis favors upholding the regulation.

3  Bretches has not suffered a constitutional injury because the regulation, as applied,
4  satisfies the *Turner* test. *See Turner*, 482 U.S. at 89-91. Furthermore, inmates do not have any
5  First Amendment right to pursue publication of their written works. *See Stroud v. Swope*, 187
6  F.2d at 851. Lastly, prisoners possess no recognized right to conduct a business while
7  incarcerated. *French v. Butterworth,* 614 F.2d at 24. Consequently, Bretches' claim for
8  violation of the Civil Rights Act for infringement of his First Amendment rights fails. Based on
9  the record before this Court, the Court finds that it appears beyond a doubt that Bretches can
10 prove no set of facts which would entitle him to relief in support of his as applied challenge to
11 CCR, Title 15, § 3024(a), which prohibits business dealings by inmates. *See Terracom*, 49 F.3d
12 at 558.

13 **C.    Prayer for Declaratory Judgment.**

14 Bretches also seeks a declaratory judgment order stating that prisoners have a right to
15 publish books, that the warden violated his First Amendment rights, that the warden used prison
16 regulations to implement impermissible content regulation when he banned publication of the
17 "Dog O' War" book, and that banning the book was a form of retaliation against Bretches based
18 on the content of his book.

19 The Declaratory Judgment Act ("DJA") grants courts discretionary jurisdiction to declare
20 the rights of litigants. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (citing 28 U.S.C.
21 § 2201). The DJA confers unique and substantial discretion to the courts to decide whether to
22 exercise declaratory judgment jurisdiction. *Id*. "[T]he operation of the Declaratory Judgment
23 Act is procedural only. In providing remedies and defining procedure in relation to cases and
24 controversies in the constitutional sense the Congress is acting within its delegated power over
25 the jurisdiction of the federal courts which Congress is authorized to establish." *Aetna Life Ins.*
26 *Co. v. Haworth*, 300 U.S. 227, 240 (1937). Thus, the DJA governs the issue when determining
27 whether a district court should dismiss a claim for declaratory relief. *Gov't Employees Ins. Co. v.*
28 *Dizol*, 133 F.3d 1220, 1222-24 (9th Cir. 1998). "[T]his discretion is not unfettered. '[A] District

Court cannot decline to entertain such an action as a matter of whim or personal disinclinations.'" *Id.* at 1223 (citing *Public Affairs Associates v. Rickover*, 369 U.S. 111, 112 (1962)).

Here, based on the record before this Court, the Court dismisses the complaint on the basis that it appears beyond a doubt that Bretches can prove no set of facts which would entitle him to relief to his challenge of the publication ban under CCR, Title 15, Section 3024(a). Consequently, the Court exercises its "unique and substantial" discretion to decline to hear Bretches' claims for declaratory relief. *See Wilton*, 515 U.S. at 286.

## CONCLUSION

For the reasons set forth herein, Plaintiff's complaint is DISMISSED. The Clerk shall terminate the pending motions for preliminary injunction as MOOT, enter judgment in this matter, and close the file.

**IT IS SO ORDERED.**

Dated: May 10, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE